E1HJHUNC                    Conference

 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  UNITED STATES OF AMERICA,

 4          v.                          13 Cr. 521 LTS

 5  JOSEPH HUNGER, TIMOTHY VAMVAKIAS
    and DENNIS GOGEL,
 6
                Defendants.
 7
    ------------------------------x
 8
                                        January 17, 2014
 9                                      12:00 p.m.

10  Before:

11                  HON. LAURA TAYLOR SWAIN,

12                                      District Judge

13                      APPEARANCES

14  PREET BHARARA,
        United States Attorney for the
15      Southern District of New York
    AIMEE HECTOR,
16  ANNA M. SKOTKO,
        Assistant United States Attorneys
17
    MARLON G. KIRTON,
18      Attorney for defendant Hunter

19  BOBBI C. STERNHEIM,
        Attorney for defendant Vamvakias
20

21  GLEN A. GARBER,
        Attorney for defendant Gogel
22

23  Also Present:
        MS. A.J. ELTERMAN,
24      German Interpreter

25

1              (In open court)

2              THE COURT:  Good afternoon.  Would everyone other than

3        the attorneys please be seated.

4              (Case called)

5              THE COURT:  May I have a status report, please, Ms.

6        Hector.

7              MS. HECTOR:  Yes, your Honor.  Since our last

8        conference, the government has produced a significant volume of

9        discovery to each of the defense counsel on hard drives

10       provided by them.

11             THE COURT:  When was that done?

12             MS. HECTOR:  That was done on the 14th.

13             THE COURT:  January?

14             MS. HECTOR:  January, just recently.  It took some

15       time to download it all on to the hard drives and to obtain the

16       hard drives.

17             THE COURT:  I have to ask you to pause for a moment

18       because I realize I haven't addressed Ms. Elterman.  You're

19       interpreting from English to German and vice versa?

20             THE INTERPRETER:  Yes.

21             THE COURT:  Would you mind taking the interpretation

22       oath.

23             (German Interpreter Ms. A.J. Elterman was duly sworn)

24             THE COURT:  Mr. Gogel, the interpreter has promised to

25       interpret accurately.  If you have any difficulty understanding

1    the interpretation, or hearing through the earphones, raise

2    your hand and we can address it.

3            DEFENDANT GOGEL:  Yes, your Honor.

4            THE COURT:  Are you understanding everything clearly

5    so far?

6            DEFENDANT GOGEL:  Yes, your Honor.

7            THE COURT:  He said, "yes."  Thank you.  And greetings

8    to the family members and friends who are here.  Thank you all

9    for coming to court.

10           Ms. Hector, you may continue.

11           MS. HECTOR:  Certainly, your Honor.  The significant

12   outstanding items of discovery consist predominantly of

13   evidence obtained after arrest pursuant to several search

14   warrants.  We are still in the process of producing that

15   material.  Much of it needs to go and be analyzed by the DEA

16   lab because a lot of it is electronic, such as cell phones,

17   computers, et cetera.  We plan to ask for expedited review of

18   those materials and anticipate that it would most likely take

19   approximately 90 days to get the results of those analyses.

20   That's the update on discovery.

21           The other thing the government wanted to ask your

22   Honor today is whether the court would set a trial date in this

23   matter, and the government would like to propose a trial date

24   around the time-frame of October, which we believe is a

25   significant period of time from now, and we think given the

1   volume of discovery, that that would be an appropriate

2   time-frame.

3           Given the likelihood of this case proceeding to trial

4   and the fact there are three defendants here now and

5   potentially two additional that we expect to arrive, we think

6   it would make sense to set a date so that everyone can have it

7   on their calendars and we're not in a position later where,

8   given everyone's competing calendars, we have trouble setting

9   it.

10          THE COURT:  How much time would you anticipate at this

11  point would the government need to present its principal case

12  at a trial?

13          MS. HECTOR:  We are estimating two to three weeks.

14          THE COURT:  Even assuming a joint trial with all of

15  the defendants?

16          MS. HECTOR:  Yes, your Honor.

17          THE COURT:  Thank you.  I'll hear from defense

18  counsel.  Ms. Sternheim.

19          MS. STERNHEIM:  I have had this conversation with Ms.

20  Hector.  I have a troublesome trial schedule, as I know the

21  court does as well.

22          I am preparing to try one of the embassy

23  bombing-charged clients in a case that has now added another

24  defendant, and Judge Kaplan has calendared for November 3rd.  I

25  have asked the judge to move that date till after New Year's

1   because I direct the Intensive Trial Advocacy Program at the

2   Cardozo Law School, having just finished that on Wednesday.  I

3   do that every year, the first two weeks in January, and I could

4   not try that case and be available for my responsibilities at

5   the law school.

6           As of this date, I still have a firm November 3rd

7   trial date.  If this trial was to start in October, it would

8   run into that and I wouldn't have adequate time to prepare for

9   what is a very complicated, multinational situation.  I also

10  have a trial set by Judge Engelmayer for September, with the

11  understanding that if I am not able to do that, although I am

12  primary counsel, my learned counsel would be available.

13          The long and short of it is if my trial in November

14  was pushed into 2015, I could be available, but as things stand

15  now, I can't represent that I would be.  I have discussed this

16  with Mr. Vamvakias.  He is desirous of me continuing

17  representation of him, as am I, and he is willing to wait for a

18  later trial date when my calendar is available.

19          So that is all I can state at the moment, your Honor,

20  but I can't in good conscience commit to an October date

21  knowing that it would conflict with the November date.

22          THE COURT:  And so are you saying, among other things,

23  that you could not, given the current scheduling of Judge

24  Kaplan's case, be available to try this case until sometime in

25  the spring or late winter of 2015?

1          MS. STERNHEIM:  Yes, your Honor.

2          THE COURT:  But if Judge Kaplan's case were to be

3     moved from November, then you could try this case in an October

4     time-frame, or would the Judge Engelmayer case complicate that?

5          MS. STERNHEIM:  Well, considering I have a firm

6     commitment by my co-counsel in that, I would be able to

7     accommodate this Court knowing that my client is well

8     represented in the other matter.

9          Whether Judge Engelmayer will approve of that I don't

10    know, but I could explain to him what the situation is.  I

11    can't explain to Judge Kaplan that I committed to something

12    knowing that he as of now has calendared something that will

13    commence while this trial would still be ongoing.  If that case

14    is moved, and as the government represents, we could pretty

15    much complete this case in October, I can make myself

16    available, but I can't firmly state today that that is the

17    situation.  I can only keep you, counsel and the government

18    advised of any changes as quickly as I receive them.

19         THE COURT:  Well, it would seem to me prudent, subject

20    to hearing from Messrs. Kirton and Garber, but just based on

21    what you said of your schedule, I think it prudent to block out

22    October for this trial, assuming that we can do that on my

23    calendar, and I think we can.  Ms. Ng is going to confirm that.

24         I would ask that you let Judge Kaplan know that I've

25    scheduled this one-month trial, multi-defendant trial for

1    November, and he can add that to the reasons for your request

2    for delay of the other trial.

3              MS. STERNHEIM:  Thank you.

4              THE COURT:  And we can work toward that trial date and

5    see how things develop.

6              MS. STERNHEIM:  I assume that if Judge Kaplan contacts

7    your Honor, you will tell him that I have explained as best as

8    I can what the situation is?

9              THE COURT:  Of course.

10             MS. STERNHEIM:  Thank you very much.

11             THE COURT:  Mr. Kirton.

12             MR. KIRTON:  I have no scheduling conflicts for the

13   fall, this year.  All of my conflicts are I think between now

14   maybe the end of May.  My concern is the state of the discovery

15   in this case.  I think if what we received this week were the

16   sum total of everything, I think a fall trial date will be

17   fine.

18             I think not knowing exactly when we are going to have

19   complete discovery in this case -- in fact, I think we have a

20   suggested timeline of 90 days -- I think it may be difficult

21   for us to determine what, if any, motions to file and what, if

22   any, hearings would come out of those motions.

23             I would have preferred, and I don't know if anyone

24   agrees to this or not, to set a date of sometime I guess around

25   the time the second set of discovery is due, and then maybe the

1    parties could know, based on what we receive, what, if any,

2    motions could be filed and what, if any, dates for trial and

3    motions and hearings should be set.  That is just my thought.

4         Having said all of that, I have no technical problems

5    with the fall or winter trial date in this case in terms of

6    scheduling.

7         THE COURT:  I was intending to set a further interim

8    pretrial conference in the 60-day-or-so time-frame so that we

9    could see where the additional discovery is, perhaps be more

10   specific about that and hear about any anticipated motion

11   practice coming out of the discovery that has been made.  I

12   wasn't planning to just simply set a pretrial conference and be

13   done with it.

14        Since we are in January and there are a number of

15   things yet to be done, it is possible that there are events or

16   circumstances that could put some pressure on the October trial

17   date that might make us look at that again, but I think it is

18   better to have a reason to be focused and efficient in

19   preparation for that nearer-term trial and to have that time

20   reserved for attention to that trial on my calendar rather than

21   leaving everything quite open, given Ms. Sternheim's issues and

22   the way in which we all end up having trial schedules that can

23   complicate things.

24        MR. KIRTON:  I have just one follow-up issue.

25        We know that the items we received this week contain

1    between 80 and a hundred gigabytes worth of material.  Does the

2    government have a sense of how much material would be contained

3    in the follow-up discovery to be received by the defense?

4              THE COURT:  Ms. Hector.

5              MS. HECTOR:  Your Honor, my technical knowledge is not

6    great enough to quantify it in terms of gigabytes or megabytes,

7    but there was a significant amount of telephones and computers,

8    et cetera.  There is a video camera that was in a house in

9    Thailand that we have downloaded material to.  It is fairly

10   significant.  I don't think it is as voluminous as what they

11   received thus far, but it is a fairly significant amount of

12   material.

13             THE COURT:  And some of that is video and audio files?

14             MS. HECTOR:  Yes.

15             THE COURT:  And I think that is an important thing to

16   know because those take up more storage space, so 80 gigabytes

17   of video is a different sort of review challenge from 80

18   gigabytes of data or text.  Both are significant.  They're just

19   a little different.

20             So you're expecting to produce telephone information

21   which may be data and could be images.  You're expecting to

22   produce information from computer hard drives which again could

23   be data, could also be images, and certainly images from the

24   surveillance camera?

25             MS. HECTOR:  Yes, from that camera, and there is also

1    material from a search warrant on Mr. Hunter's home in Kentucky

2    that is also being gathered right now for production as well.

3         THE COURT:  Does that consist of documents and other

4    physical materials, or does that involve more electronic

5    equipment and data downloads from electronic equipment, or

6    both?

7         MS. HECTOR:  There is both, both.

8         THE COURT:  And so will you be making this production

9    on a rolling basis?

10        MS. HECTOR:  That is our plan, your Honor.  The

11   materials that still need to be analyzed by the DEA lab are the

12   things that will take longer.  The video camera from Thailand

13   is being downloaded right now, so we can produce that more

14   expeditiously.  The documents, for instance, from the home

15   search are something that would be able to be produced more

16   quickly.  So our plan is to do it on a rolling basis as we

17   receive those materials in a form to produce.

18        THE COURT:  Thank you.  Mr. Garber.

19        MR. GARBER:  Well, I am kind of in a hole right now

20   with what I was going to say because of the discussions that

21   have been going on.  I would join with Mr. --

22        THE COURT:  Would you speak a little more slowly and

23   let the interpreter see your face?

24        MR. GARBER:  Yes.

25        THE COURT:  Thank you.

1              MR. GARBER:  Okay.  Going last, I don't know how

2    appealing this argument is going to be.  I think it is

3    premature to set a trial date.  I just received the audio file

4    today.  I don't know if the audio files are in German and need

5    to be translated.  Seeing nodding "no," that is good thing.

6              We don't know what investigation is going to be

7    needed.  This is a case where at least some of the acts are

8    alleged to have occurred off American soil, and I am not in a

9    position to know how long or what investigation would be needed

10   in addition to understanding what motions.

11             I do know there was a pro se motion pending that I am

12   asking the court to hold off on on deciding because I have to

13   decide whether I want to join on that or supplement that.

14             THE COURT:  Well, I have issued orders in connection

15   with that pro se motion saying that I will not entertain it as

16   a pro se motion because there is no dual representation.  So

17   you have to decide whether you, as attorney, wish to bring that

18   motion.

19             MR. GARBER:  I may.  What I would suggest, okay, is

20   putting it off about 90 days and then seeing where we are as

21   far as a trial.  I understand the wisdom in locking down a

22   trial date for October, especially with Ms. Sternheim's

23   scheduling problems.  If we don't do that, we may be talking

24   eight months after that.

25             THE COURT:  Slow down.

1          MR. GARBER:  Sorry.  I just want to I guess plant the

2    seed I am concerned about setting a trial date right now given

3    the fact that I have not had an opportunity to wrap my head

4    around all the information here and know if that is even a

5    realistic date.

6          I have no conflicts for October and November.  If the

7    court wants to set that aside, you know, I am fine with that,

8    but with the caveat that when we come back -- and it shouldn't

9    hopefully be with a pretrial conference, but for a discovery

10   discussion where we're at and whether or not that is a

11   realistic trial date, I am okay with that.  That is what I

12   would ask for, maybe late April or early May coming back on

13   status and to reevaluate that trial date.

14         THE COURT:  I am setting the trial for October 6th, a

15   Monday, and blocking the entire month of October.  We'll come

16   back here in 60 days to review the status of discovery and

17   anticipated motion practice.

18         I will be open to hearing about any difficulties that

19   counsel in good-faith belief would hinder their ability to try

20   the case on the time-frame that I have set, but I will expect

21   that counsel will be working and preparing now in the knowledge

22   and expectation that the court has set that October trial date.

23         And so a request for an adjournment that says I

24   haven't had a chance to get to it yet or something like that is

25   not going to be terribly compelling and will be concerning to

1      the court.  So to be clear, we have an October trial date, and

2      counsel should be working with the materials in hand in

3      anticipation of being ready for that October trial date.

4              If subsequent events or volume of discovery or

5      something that has not yet been seen that is in the discovery

6      that was produced only a couple of days ago tends to make the

7      October time-frame impossible or unrealistic, we'll engage that

8      seriously, but I do expect counsel to be preparing for the

9      October date now.  Ms. Sternheim, you'll be making your appeals

10     to Judge Kaplan and letting me know?

11             MS. STERNHEIM:  Yes.  All I wanted to say is in the

12     event the November 3rd trial is a firm date, I would not be

13     able to commit to this trial knowing that it is likely to run

14     over and not give me any opportunity to prepare, but we will

15     deal with that if we have to.

16             I just wanted to inquire if the court is going to set

17     a next appearance 60 days from now, and it is my understanding

18     that the court prefers Fridays, I just want to alert the court

19     that the only Fridays I would be available in March are the 7th

20     and the 28th before you go through all the calendaring.

21             Thank you.

22             THE COURT:  Thank you.  Mr. Kirton.

23             MR. KIRTON:  There is just one issue in terms of again

24     setting a trial date which has actually nothing to do with the

25     attorneys.  It has to do with the defendants.  They're all in

1    MCC.  I believe they all have separation orders.

2              So as my client receives items of discovery as well as

3    the others, they may want to use the law library to follow up

4    on some of the issues in discovery or just things that are

5    generated in general conversation.  My client is having a very

6    difficult time getting access to the law library.

7              I believe he is allowed one hour per week.  I don't

8    know exactly how much.  I know he is allowed to go just once

9    per week.  Because of the separation orders, from time to time

10   he finds it difficult to get access to the library when he's

11   supposed to get that access.  So again as attorneys, we all

12   have our challenges.  There is challenge associated with the

13   discovery, but that is something that I guess none of us, the

14   defense team, has any control over.

15             I have already spoken to the legal department about

16   this.  They're looking into trying to accommodate I guess my

17   client in terms of getting access to the library.  I just

18   wanted to raise this issue because it may come up.  It has

19   already come up between my assignment and today, and it may

20   come up going forward again, and that may in some way impact I

21   guess the defense's ability to prepare for this trial.

22             I rely very heavily on the things that my client tells

23   me in this case.  This is an international case.  They were

24   arrested in Thailand.  There is allegations of things happening

25   in the Philippines.  I have heard about so many countries in

1    the course of my investigation of this case.  There are several

2    places all over the world that this case impacts.  I rely on my

3    client, and I think that in order for us to be fully prepared

4    for this trial, he needs to have regular access to the law

5    library.

6            THE COURT:  Ms. Sternheim.

7            MS. STERNHEIM:  I have something to add to this.  I

8    just wanted to inquire of the government whether they were

9    pressing the separation because sometimes it is beyond their

10   control and just a BOP administrative requirement.  It is my

11   understanding that they are.  I do not know the reasons and I

12   don't know if they wish to disclose that.  It has posed a

13   barrier for my me to visit Mr. Vamvakias.

14           If any of my co-counsel are visiting their client or

15   if their clients are going back-and-forth to the law library or

16   medical, we are not permitted to see our client because of a

17   separation order.  So that has posed a number of times where

18   myself and my assistant have gone to visit Mr. Vamvakias, only

19   to be told that we cannot see him.  That is an obstacle that

20   will impact our ability to review the discovery and prepare for

21   trial.

22           THE COURT:  How have these issues been handled in the

23   past when defendants with separation orders are in the same

24   facility?  Is it possible to get special extended blocks of

25   library time, for instance, on separate days?  Is it possible

1    to get commitment to particular blocks of visiting hours?

2              Ms. Hector.

3              MS. HECTOR:  I have encountered this in some other

4    cases, and there are numerous different kinds of conditions

5    that can be employed.  Sometimes, as your Honor said, extended

6    hours.  Sometimes some of these cell blocks have computers on

7    the cell block that inmates can access without having to book

8    time in the law library.

9              There is also a relatively new program I am aware of

10   that allows some inmates to download, or for us or the prison

11   to download some of the discovery onto iPods that don't have

12   access to the internet so that they can listen to tapes on

13   their own in their individual cells.  There is also potentially

14   an option we could inquire about about moving these defendants

15   in such a way among the prisons that are accessible to this

16   courthouse to ease some of those issues.

17             What I would say to the court is we are now aware of

18   some of these issues, and we will work with the prison and with

19   defense counsel to see if we can alleviate them in some way and

20   hopefully address them in a way that is acceptable to defense

21   counsel and allows the defendants to have an adequate

22   opportunity to review the discovery that they want to go

23   through as well.

24             We will work with both the prison and defense counsel

25   to try to address those concerns, and hopefully we can do that

E1HJHUNC                    Conference

1    without having to raise it back to your Honor.

2                THE COURT:  And also to facilitate defense counsel's

3    ability to meet with the defendants and not make futile trips?

4                MS. HECTOR:  Yes, yes, and perhaps some movement

5    within the system here may enable that, but we'll talk to the

6    prison system about it.

7                THE COURT:  Thank you.  Mr. Garber.

8                MR. GARBER:  Yes, I don't know why there is a

9    separation, and I can confer with my co-counsel and ask the

10   separation be lifted unless there is some reason for it that is

11   legitimate.  I don't see why there is a separation.  It will

12   restrict their ability and our ability to see our clients.

13   Most of the time we see them at MCC, we still have problems and

14   are turned away sometimes.

15               In addition, we have to take this stuff from this hard

16   drive, put it on CDs and send it to them, there's a logistical

17   issue.  I am asking why there is a separation?  I am asking for

18   the government to articulate in court the reason for that.  If

19   there is no valid reason, it should be lifted.

20               THE COURT:  Ms. Hector.

21               MS. HECTOR:  Your Honor, there are some security

22   concerns raised first and foremost by the nature of this case.

23   These defendants were collaborating with each other in an

24   attempt, a conspiracy to harm -- in fact, murder -- a DEA agent

25   and a source.  There are significant concerns about their

1    collaboration with each other and also their ability to

2    potentially evade security measures.  All of these defendants

3    have significant military backgrounds.  Some of them have had

4    some security concerns within the prison of removing handcuffs

5    that were on them at the time.

6            I also think, and we have to talk to the prison

7    because the prison did an independent assessment because they

8    were concerned, given these defendants' backgrounds and the

9    nature of the allegations, about security concerns that they

10   raised, and they made inquiries of us with respect to that.  So

11   my understanding is that it may also be the prison's concern in

12   addition to our concern that is animating this.

13           I think we can try to address this issue short of

14   lifting a separation between them, and we would like to try to

15   do that.

16           THE COURT:  I think it is appropriate in the first

17   instance for counsel to work with each other and with the

18   Bureau of Prisons to make practical arrangements that remove

19   the significant barriers and also to work toward a better

20   mutual understanding of the nature of and the reasons for the

21   separation orders.

22           To the extent defense counsel are unsatisfied on any

23   of these fronts, the issue can be queued up for me in a more

24   informed way and we'll proceed as may be appropriate under the

25   circumstances.  If issues can be resolved directly, that is

1   better.

2           Mr. Garber, I do question the separation order.  My

3   knowledge is not complete at this point as to the nature and

4   reasons for it.

5           MR. GARBER:  Thank you.

6           THE COURT:  Our next conference date, Ms. Ng?

7           THE CLERK:  Friday, Friday, March 28th, at 11:30.

8           THE COURT:  Is everyone available on March 28th, at

9   11:30?

10          MS. STERNHEIM:  Yes, and thank you.

11          MR. KIRTON:  Yes, your Honor.

12          MR. GARBER:  That is fine.

13          MS. HECTOR:  That is fine, your Honor.

14          THE COURT:  The next conference is set for March 28th,

15  at 11:30.  Is there a request for exclusion from speedy trial

16  computations of the time from now until the trial date, which

17  is October 6th?

18          MS. HECTOR:  Yes, your Honor.

19          THE COURT:  Any objection?

20          MR. GARBER:  No.

21          MS. STERNHEIM:  No.

22          MR. KIRTON:  No, your Honor.

23          THE COURT:  The request is granted.

24          I find the ends of justice served by the granting of

25  an exclusion from speedy trial computations from the period

1    from today's date through October 6th, 2014 outweigh the best

2    interests of the public and each of the defendants in a speedy

3    trial because of the need for time for review and production of

4    discovery, consideration of potential motion practice,

5    investigation, discussions, reasonable trial preparation

6    activities, and advice in connection with all of those matters.

7    Accordingly, the time period is excluded prospectively.

8              Is there anything else that we need to take up

9    together this afternoon?

10             MS. STERNHEIM:  Not from the defense.

11             MS. HECTOR:  Nothing from the government.

12             THE COURT:  Thank you.  I would simply ask that the

13   marshals permit the defendants to acknowledge on their way out

14   the people that have come to court for them.  I thank you for

15   making that accommodation.  We are adjourned and I look forward

16   to seeing you again.

17             (Court adjourned)

18

19

20

21

22

23

24

25